IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CLEARONE ADVANTAGE, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. JKB-23-03446 |
| MICHAEL H. KERSEN, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

On January 5, 2024, the Court entered a Temporary Restraining Order ("TRO") against Defendants Michael H. Kersen and Lamar Gilmore. (ECF No. 10.) That TRO has since been extended to remain in effect until 11:59 p.m. on February 1, 2024. (ECF No. 18.) Simultaneously with its issuance of the TRO, the Court scheduled a hearing on Plaintiff ClearOne Advantage LLC's concurrent Motion for Preliminary Injunction against Kersen.[1] That hearing was scheduled for January 31, 2024. (ECF No. 23.) On the basis of Kersen's representations that he lives in Denver, Colorado and lacks the means to travel to Baltimore for the hearing, the Court permitted him to participate and testify at the hearing by telephone. (*Id.*)

On January 25, 2024, Plaintiff docketed a notice concerning two emails it received from Kersen earlier that same day. In those emails, Kersen wrote to Plaintiff's counsel:

> Please inform the court that I will not be able to make it to the court date. I really just don't care about this because it never happened nothing was taken. Kind of a waste of my time to be honest. They can enter the primliminary [*sic*] injunction.

---

[1] The Court has not yet scheduled a Preliminary Injunction Hearing as to Defendant Gilmore because he has not yet been served in this case.

(ECF No. 25-1 at 2.) In a second email, Kersen explains that he "want[s] to respect the courts [*sic*] time," that he does not feel that the order affects him, and that he sees "[n]o need to challenge this." (*Id.*)

The Court understands Kersen's statements to indicate that he does not object to the entry of a Preliminary Injunction against him. Accordingly, the Court considers Plaintiff's Motion for Preliminary Injunction unopposed as to Kersen. Given this unusual circumstance, and that Kersen was given a full and fair opportunity to oppose the Preliminary Injunction, the Court therefore finds it unnecessary to hold a hearing on Plaintiff's Motion. *See GlaxoSmithKline, LLC v. Brooks*, Civ. No. PWG-22-00364, 2022 WL 2916170, at *2 (D. Md. July 25, 2022) (noting that holding a preliminary injunction hearing is not always required and that "this Court has found that it may be appropriate to convert a TRO into a preliminary injunction as a result of a defendant's failure to defend and/or failure to appear"); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (3d ed. 2023) (explaining that an evidentiary hearing on a preliminary injunction request is not required when there is no genuine controversy).

Although the motion is unopposed, the Court still has an independent obligation to ensure that entry of a preliminary injunction is warranted. *See generally Nutramax Labs, Inc. v. Pure Supplements Ltd.*, Civ. No. JMC-17-01260, 2017 WL 2772485 (D.S.C. June 27, 2017) (analyzing an unopposed preliminary injunction motion).

The purpose of a preliminary injunction is to "preserve[] the status quo pending a final trial on the merits[.]" *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). It is "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is

likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The Court considered these same factors in its January 5, 2024 Memorandum evaluating Plaintiff's request for entry of a TRO. (*See* ECF No. 9.) Upon a renewed review of the whole record, including all filings in this case subsequent to January 5, the Court sees no reason to disturb the findings of fact and conclusions of law set forth in its January 5 Memorandum. Indeed, more recent filings by Plaintiff only strengthen its case for issuance of a Preliminary Injunction. (*See* Maltman Decl. ECF No. 14-1 (detailing electronic log-in records indicating that Kersen was likely using Gilmore's account during the period between when Kersen was fired and when Gilmore was fired to access lead list information); Staudt Decl., ECF No. 13-5 (stating that in late November 2023, Kersen and Gilmore offered him a "a significant amount of money" in exchange for lead list information).)

In particular, the Court finds that Plaintiff has carried its burden of showing that it is likely to succeed against Kersen on the merits of at least Counts I (breach of contract), II, and III (misappropriation of trade secrets in violation of federal and Maryland law, respectively), on the grounds that unrebutted affidavit testimony shows that Kersen conspired with Gilmore to misappropriate Plaintiff's confidential customer lead lists in violation of their contractual obligations and trade secrets laws.[2] (*See* Wrinn Decl., ECF No. 3-2; Turner Decl., ECF No. 3-10; Thompson Decl., ECF No. 4-1; ECF No. 9 at 6–12 (analyzing the likelihood of Plaintiff's success on its breach of contract and trade secrets claims).) Furthermore, the Court finds that Plaintiff remains likely to suffer irreparable harm in the absence of continued injunctive relief, as Plaintiff

---

[2] In the interests of judicial economy, and given that the Motion is unopposed, the Court defers consideration of the merits of Counts IV–VIII, and accordingly makes no finding as to the likelihood of Plaintiff's success on these Counts.

remains at significant risk of irrevocably losing trade secrets and goodwill in the industry. (*See* ECF No. 9 at 12–13.) Third, the balance of the equities remains clearly in Plaintiff's favor, as the hardship to Plaintiff from the continued misappropriation of its confidential lead lists is substantial, while the hardship to Kersen of holding him to a contract he agreed to sign is minimal.[3] (*See id.* at 14–16.) Finally, the public interest supports entry of a Preliminary Injunction because, as the Court previously explained, the public interest favors the protection of trade secrets and the enforcement of reasonable restrictive covenants. (*See id.* at 15.)

For these reasons, a separate Order granting Plaintiff's request for a Preliminary Injunction will issue. The Order will also vacate the TRO as to Kersen and vacate the Order setting in the Preliminary Injunction Hearing as to Kersen.

DATED this __29__ day of January, 2024.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge

---

[3] Indeed, to the extent that Kersen denies that he in fact is in possession of any confidential customer lead list information, this would tend to suggest that the hardship to him of entering the preliminary injunction would be minimal, since it generally will order him not to use information he claims he does not have in the first place.