## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CLEARONE ADVANTAGE, LLC,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. JKB-23-03446** |
| **MICHAEL H. KERSEN, *et al.*,** | * | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM

Several motions are pending in this case, including two dispositive motions filed by Plaintiff, ClearOne Advantage, LLC ("ClearOne" or "COA") which the Court will construe as motions for summary judgment against each of the two Defendants, LaMar Gilmore III[1] and Michael H. Kersen. (ECF Nos. 74 (Motion for Judgment Against Gilmore), 85 (Motion for Judgment Against Kersen). Each Defendant appears in this matter *pro se*. The Defendants do not oppose either dispositive motion, and the time for them to file an opposition has passed. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the following reasons, both dispositive motions will be granted in substantial part, and the Court will enter permanent injunctions against the Defendants. All other pending motions in this case will be denied as moot.

The Court will begin by setting out the general factual and procedural background of the case. Next, the Court will discuss the applicable legal standards. The Court will then analyze Plaintiff's request for summary judgment, with additional factual findings discussed as relevant. Finally, the Court will turn to Plaintiff's request for entry of a permanent injunction.

---

[1] Plaintiff refers to Mr. Gilmore as "Lamar Gilmore" but Gilmore has generally referred to himself as "LaMar Gilmore III" (*see, e.g.*, ECF No. 72); the Court takes no position as to what Mr. Gilmore's legal name is, but for the purposes of this ruling the Court uses the name that Mr. Gilmore calls himself.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

The Court summarized the basic factual background of this case in its Memorandum dated

January 5, 2024. As the Court explained in that Memorandum:

> ClearOne is a financial services company headquartered in Baltimore that
> helps people develop and implement debt settlement programs with their creditors.
> (ECF No. 1 at 1.) ClearOne maintains confidential and proprietary lists of "leads,"
> *i.e.*, "persons who might benefit from [ClearOne]'s services." (*Id.* at 2.) The leads
> are stored on a password-protected internal database. (*Id.*)

> ClearOne hired both Defendants in March 2023. (*Id.* at 8.)    Both
> Defendants worked remotely for ClearOne as "account executives." (*Id.*) In that
> role, the Defendants had access to the leads database and were assigned to call leads
> to solicit business. (*Id.* at 2.) Upon joining the company, each Defendant signed a
> Confidentiality, Nondisclosure and Fair Competitive Practices Agreement
> ("Confidentiality Agreement") and a Telecommuting Agreement. (*Id.* at 8.) The
> Confidentiality Agreement provided, *inter alia*, that the employee "may not, at any
> time, copy, disclose, or make use of Confidential Information for any purpose other
> than Employer's authorized job performance for the Company." (*Id.* at 9.)

> Kersen was fired on May 15, 2023, and Gilmore was fired on November
> 20, 2023. (*Id.* at 8.) Shortly after Kersen was fired, but before Gilmore was fired,
> Kersen allegedly began conspiring with Gilmore (who was still employed by
> ClearOne) to misappropriate ClearOne's lead lists for the benefit of an unidentified
> competing company. (ECF No. 3 at 2.) As part of the scheme, Gilmore would
> allegedly log into ClearOne's customer lead database, copy the customer lead
> information into a separate spreadsheet, and then pass the leads along to Kersen.
> (*Id.*) After Gilmore was terminated, the Defendants allegedly attempted to recruit
> at least two other ClearOne employees to join in the scheme.    The Defendants
> offered to pay these current employees thousands of dollars per month in exchange
> for customer lead data. (*Id.* at 3.) These employees declined to join in the scheme
> and instead reported the Defendants' efforts to ClearOne. (*Id.*)

*ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 430 (D. Md. 2023).

Plaintiff initiated this action on December 21, 2023, and filed a motion for a temporary

restraining order ("TRO") against both Defendants that same day. (ECF Nos. 1, 3.) The Court,

after a hearing, granted the TRO and subsequently extended it until February 1, 2024. (ECF Nos.

9, 10, 18.) The Court later converted the TRO into a preliminary injunction against Kersen on

January 29, 2024, after Kersen indicated that he did not oppose entry of the injunction. (ECF No.

2

26.) And the Court entered a preliminary injunction against Gilmore on April 3, 2024, after holding a hearing on the matter the previous day. (*See* ECF No. 55.) Thus, both Defendants have been under some form of injunction for most of the life of this case.

Both Defendants have filed Answers (ECF Nos. 56 (Kersen Answer), 67 (Gilmore Answer).) Discovery has been ongoing, although Plaintiff contends that the Defendants have largely refused to participate.

Since August 2024, the parties have filed a barrage of motions. (ECF Nos. 72, 74, 76, 78, 79, 81, 82, 85.) Both Defendants filed motions to in effect permit them to consent to entry of permanent injunctions against them but without admitting any liability or wrongdoing. (ECF No. 72 (Gilmore's "Motion to Consent Prayer for Relief Demands (Consent to Permanent Injunction)"); ECF No. 82 (Kersen's "Submission of Consent to Permanent Injunction").) Defendant Kersen also filed a Motion to Dismiss (ECF No. 78), but he subsequently filed a Motion to Withdraw the Motion to Dismiss (ECF No. 81). Plaintiff, in addition to filing its two dispositive motions (ECF Nos. 74, 85), also filed Motions to Compel Discovery against each Defendant (ECF No. 76 (Motion to Compel against Gilmore); ECF No. 79 (Motion to Compel and for Sanctions against Kersen)). Because the Court will grant summary judgment in Plaintiff's favor and close this case, all other motions will be denied as moot.

## II.    LEGAL STANDARD

Plaintiff does not specify the rule under which its dispositive motions are brought. Each motion is simply styled as a "Cross-Motion for Entry of Final Judgment and Permanent Injunction." In the absence of any indication that some other provision of the Federal Rules would be more appropriate, the Court will construe the dispositive motions as motions for summary judgment under Federal Rule of Civil Procedure 56.

Under Rule 56, a party seeking summary judgment must show that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In proving the presence or absence of a genuine dispute, either party may point to materials in the record, such as admissions, stipulations, depositions, documents, and electronically stored information. Fed. R. Civ. P. 56(c). In determining whether a genuine dispute exists, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 252, 255; *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

When, as here, a summary judgment motion is unopposed, the Court may consider facts asserted in the movant's papers to be undisputed, and may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e).[2] Even when faced with an unopposed summary judgment motion, however, the district court is still obligated to "thoroughly analyze[]" it to ensure that the movant is entitled to judgment as a matter of law. *Maryland v. Universal Elecs., Inc.*, 729 F.3d 370, 380 (4th Cir. 2013); *see also Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (stating that a court must review "the entire record" to determine whether the movant is entitled to summary judgment).

---

[2] The Defendants have, at times, denied wrongdoing, but neither Defendant has filed any opposition to the dispositive motions, and their denials have taken the form of general statements that do not rebut any of the specific evidence that Plaintiff has provided. (*See, e.g.*, ECF No. 72 at 1 (Gilmore stating that he "ha[s] not monetized any leads from clearone advantage and continue[s] not to be a threat to do so in the future").) Moreover, neither Defendant has presented their denials in the form of sworn affidavits under the penalty of perjury. "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993).

4

Furthermore, Plaintiff requests that the Court issue a permanent injunction against both Defendants. "A party seeking a permanent injunction must demonstrate 'actual success' on the merits, rather than a mere 'likelihood of success' required to obtain a preliminary injunction. *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n. 12 (1987)). The moving party must show that (1) it has suffered an irreparable injury; (2) legal (as opposed to equitable) remedies are inadequate to compensate that injury; (3) an injunction is warranted after considering the balance of hardships between the parties; and (4) the public interest would not be disserved by entry of a permanent injunction. *Id.* The decision of whether to grant a permanent injunction lies within the sound discretion of the district court. *Id.*

In accordance with the above legal framework, the Court will begin by analyzing whether Plaintiff has shown success on the merits of its claims, under the Rule 56 summary judgment standard. The Court will then turn to evaluating Plaintiff's entitlement to a permanent injunction against each Defendant.

## III.    ANALYSIS

### A. Merits of Plaintiff's Claims

In its dispositive motions, Plaintiff moves for judgment to be entered in its favor on all seven claims with respect to Kersen, and six out of seven claims with respect to Gilmore. (ECF Nos. 74, 85.) Those claims are: breach of contract (Count I); misappropriation of trade secrets under federal and state law (Counts II and III, respectively); violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (Count IV); unfair competition (Count V); tortious interference with contract and with prospective business advantage (Counts VI and VII, respectively); and civil conspiracy (Count VIII). (*See generally* ECF No. 1.) The Court will

evaluate each of these claims in turn.

### 1. Breach of Contract (Count I)

The Court has already articulated the standard for breach of contract under Maryland law:

> To prevail on a claim for breach of contract, the plaintiff must show at a minimum that (1) the defendant owed a contractual obligation to the plaintiff, and (2) the defendant breached that obligation. *RRC N.E. LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010). If the contract constitutes a restrictive covenant, Maryland law imposes additional requirements. . . . To enforce a restrictive covenant, the employer must show—in addition to the two breach of contract elements above—that (1) the employer has a legally protected interest, (2) the covenant is no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant does not impose undue hardship on the employee, and (4) the covenant does not violate public policy. *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) (citing *Silver v. Goldberger*, 188 A.2d 155, 158 (Md. 1963)).

*ClearOne Advantage*, 710 F. Supp. 3d at 432.

Applying these standards, and after considering the evidence in the light most favorable to the nonmovants, the Court concludes that Plaintiff is entitled to summary judgment on its breach of contract claims with respect to both Defendants.

Turning first to the basic breach elements, the undisputed evidence shows that Plaintiff is entitled to relief. As the Court previously explained:

> ClearOne has produced copies of the Confidentiality and Telecommuting Agreements signed by both Defendants. (ECF Nos. 3-3 to 3-6.) These agreements provided that the Defendants agreed, *inter alia*, to maintain the confidentiality of current and prospective customers and to refrain from soliciting customers or current ClearOne employees. (*Id.*) Second, ClearOne has produced evidence showing that Defendants have likely violated the terms of those agreements in several ways by providing confidential customer information to a competing business and by soliciting current ClearOne employees to participate in disclosing confidential customer information. (*See* Wrinn Decl., ECF No. 3-2 (describing Defendants' alleged scheme); Turner Decl., ECF No. 3-10 (declaration of current ClearOne employee that Defendants asked her to provide them with confidential ClearOne customer information); Thompson Decl., ECF No. 4-1 (same).)

*ClearOne*, 710 F. Supp. 3d at 433.

The Court previously found, at the preliminary injunction stage, that this evidence was sufficient to show that Plaintiff was likely to prevail on its breach of contract claim. *Id.* Although these findings are not, by themselves, binding at this stage, *see Blake v. Balt. Cnty.*, 662 F. Supp. 2d 417, 421 (D. Md. 2009), neither Defendant has produced any evidence to the contrary, nor has Plaintiff pointed to any material change in the interlude, so the Court takes these undisputed facts as true. The Court has also considered the testimony it heard during the preliminary injunction hearing as to Gilmore on April 2, 2024 (*see generally* ECF No. 60), at which Gilmore participated but declined to present evidence, (*id.* at 83). Upon a fresh review of the record, the Court concludes that there is no genuine dispute that Defendants breached their contractual obligations to Plaintiff.

Turning to the additional requirements imposed for enforcing restrictive covenants under Maryland law, the Court previously considered these four elements, and found that: (1) ClearOne has legally protected interests in maintaining the confidentiality of client lead lists and preventing employees from soliciting former colleagues with whom they worked; (2) the employment agreements were reasonable in scope, given that their noncompete provisions were limited to two years in length, certain restrictions were geographically limited, and other provisions were limited to only specific types of types of competition; (3) the covenants did not impose undue hardship on employees, because "the non-solicitation provisions are limited only to those employees and customers that Defendants actually knew of or contacted during the scope of their employment, as opposed to a broad bar against soliciting all former customers or employees, known or unknown"; and (4) the covenants were not violative of public policy, because there is a public interest in the enforcement of reasonable restrictive covenants. *ClearOne*, 710 F. Supp. 3d at 433–36.

No party has provided any reason for the Court to revisit these conclusions, and accordingly the Court continues to hold that Plaintiff is entitled to enforce the restrictive covenants it entered

with respect to both Gilmore and Kersen.

For these reasons, the Court finds that there is no genuine dispute of material fact that Defendants breached their contracts, and that their contracts constituted enforceable restrictive covenants under Maryland law. Accordingly, Plaintiff is entitled to summary judgment as to Count I.

### 2. *Misappropriation of Trade Secrets (Counts II and III)*

The Court has previously set out the legal standard for claims of misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"), U.S.C. § 1839 *et seq.*, and the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Com. Law § 11-1201 *et. seq.*:

> "To establish misappropriation of a trade secret under federal law and Maryland state law, [the plaintiff] must demonstrate that the documents at issue are trade secrets, and that that Defendants misappropriated those trade secrets." *Brightview Grp. LP v. Teeters*, 441 F. Supp. 3d 115, 129 (D. Md. 2020) (citing 18 U.S.C. §§ 1836(b)(1), 1839(3), 1839(5); Md. Code Ann., Com. Law § 11-1201(c)). Both the DTSA and MUTSA permit a court to grant an injunction to prevent "actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A); Md. Code Ann., Com. Law § 11-1202.

> Under the DTSA, a trade secret includes "all forms and types of financial, business, scientific, technical, economic, or engineering information," if (1) the owner took reasonable steps to keep the information secret, and (2) the information derives independent economic value from not being generally known or readily ascertainable by potential competitors. 18 U.S.C. § 1839(3). The MUTSA has a functionally identical definition of the term. Md. Code Ann., Com. Law § 11-1201(e); *see also Philips N. Am. LLC v. Hayes*, Civ. No. ELH-20-1409, 2020 WL 5407796, at *8 (D. Md. Sept. 9, 2020) (noting that "the DTSA and MUTSA define a trade secret in substantially the same manner") (quotation omitted).

> The definitions of misappropriation in federal and state law also mirror each other. *Brightview Grp.*, 441 F. Supp. 3d at 132. A person misappropriates trade secrets when they (1) acquire a trade secret that they know or have reason to know was acquired by improper means, or (2) use or disclose the trade secret after acquiring it through improper means. *Id.* (citing 18 U.S.C. § 1839(5)). The plaintiff can show misappropriation "simply by demonstrating that the defendant acquired [the] trade secret by improper means, even if the plaintiff cannot show use of that trade secret." *Id.* (quoting *Sys. 4, Inc. v. Landis & Gyr, Inc.*, 8 F. App'x 196, 200 (4th Cir. 2001)).

8

*ClearOne*, 710 F. Supp. 3d at 435 (D. Md. 2024) (alterations in original).

The Court concludes that Plaintiff is entitled to summary judgment based upon the evidence in the record. In the context of the TRO request, the Court found that Plaintiff was likely to prevail on the merits of this claim, as ClearOne's customer lead list constituted trade secrets, and the Defendant's actions with respect to those trade secrets constituted misappropriation:

> ClearOne has shown that its customer lead database constitutes a trade secret. First, the list constitutes a form of business information, and ClearOne took reasonable steps to keep the information secret by limiting access to the database only to employees using their assigned ID and password. (Wrinn Decl. ¶ 13, ECF No. 3-2 at 4.)   These were reasonable protections under the circumstances. *See Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525, 539–41, Civ. No. JKB-22-2363 (D. Md. Sept. 21, 2023) (holding that a plaintiff took reasonable protections to secure trade secrets when the information was stored on a password-protected database available only to employees).   Second, the information has independent economic value. ClearOne explains that the "the lead lists are *not* mass mailing lists" but are instead comprised of people who have already expressed interest in ClearOne services and provided certain confidential financial information to the company. (ECF No. 3-1 at 24–25.)  This information, which ClearOne developed using its own research and marketing efforts, could be extremely valuable in the hands of a competitor. *See Albert S. Smyth Co. v. Motes*, Civ. No. CCB-17-677, 2018 WL 3635024, at *4 (D. Md. Jul. 31, 2018) (holding that confidential customer records and lists constitute trade secrets because they would be economically valuable to a competitor); *Philips N. Am.*, 2020 WL 5407796, at *8–9 (stating that customer lists can constitute trade secrets when "the employer has invested time and resources into the development of the customer information").

> ClearOne has also shown that Defendants misappropriated the trade secrets. After Kersen was fired, he conspired with Gilmore to have him secretly pass along the lead lists. Kersen then used the lists to solicit customers for a competing debt settlement business. (ECF No. 3-1 at 10.) After Gilmore was also fired, the two tried to entice current ClearOne employees to pass along the lead information. (*Id.* at 10–11.)   These actions constitute misappropriation and attempted misappropriation, respectively.   Thus, ClearOne is likely to succeed on its misappropriation of trade secrets claims.[3]

*ClearOne*, 710 F. Supp. 3d at 435–36.

---

[3] At the TRO stage, the Court merely held that the evidence sufficed to show Gilmore had attempted to misappropriate trade secrets. However, Plaintiff has subsequently produced evidence showing that Gilmore has *in fact* misappropriated ClearOne trade secrets. (*See, e.g.*, ECF No. 4-2 at 5.)

As with the Court's previous rulings with respect to Plaintiff's breach-of-contract claim, no party has presented any legal argument or offered any evidence that would undercut any of the Court's rulings with respect to Counts II and III. All of the facts on which the Court relied in the preliminary injunction remain undisputed. Accordingly, the Court finds that Plaintiff is entitled to summary judgment on Counts II and III against both Defendants.

### 3. CFAA Violation (Count IV)

The CFAA is "primarily a criminal statute" intended to prevent computer hacking, and a private party may bring a civil suit only in limited circumstances. *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 645 (4th Cir. 2009). In particular, under 18 U.S.C. § 1030(g), a private party may bring a civil action "only if the conduct involves" one of the five factors set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(I)–(V). The only referenced factor that could possibly be relevant in this action is §1030(c)(4)(A)(i)(I), which requires that a party suffer a related loss of at least $5,000 during a one-year period.[4]

Plaintiff's briefing is silent as to these requirements for bringing a civil action under the CFAA. (*See* ECF Nos. 75 at 8–9; 85-1 at 6–7.) Plaintiff does not allege—let alone provide evidence to show—that it suffered a loss of at least $5,000, nor does it cite to any of the other possible bases for bringing a private action under this statute. (*See id.*) Because Plaintiff has not shown that any of the five factors is applicable, it is not entitled to summary judgment with respect to its CFAA claim. *See WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012) ("[P]roof of at least one of five additional factors is necessary to maintain a civil action [under the CFAA].").

---

[4] Other referenced factors, such as tampering with medical records or causing physical injury, are clearly inapposite in the circumstances of this case.

10

### 4. *Unfair Competition (Count V)*

Under Maryland law, the tort of unfair competition is founded on the premise that "no one . . . is justified in damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort." *Balt. Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943). "There are no specific elements required to establish unfair competition under Maryland law." *LSR, Inc. v. Satellite Rests. Inc. Crabcake Factory USA*, Civ. No. SAG-17-03722, 2020 WL 4903902, at *6 (D. Md. Aug. 20, 2020). Instead, "[w]hat constitutes unfair competition in a given case is governed by its own particular facts and circumstances." *Balt. Bedding*, 34 A.2d at 338. "The tort is not limited to passing off one's goods as those of a competitor, but instead applies to all cases of unfair competition in the field of business." *Brightview*, 441 F Supp. 3d at 134 (cleaned up). While the standard for unfair competition is broad, it is not boundless; to recover, a plaintiff must show that the defendant's conduct damaged or jeopardized its business. *Berlyn Inc. v. The Gazette Newspapers, Inc.*, 73 F. App'x 576, 585 (4th Cir. 2003).

Applying the broad standard to the undisputed facts of this case, the Court concludes that Plaintiff is entitled to summary judgment with respect to its claim for unfair competition. As discussed above, the undisputed facts show that the Defendants breached their contractual obligations with ClearOne, misappropriated confidential customer lead information, and then used that information for the benefit of an unknown competitor, all while attempting to solicit former colleagues to join in their scheme. These actions fall far outside the acceptable bounds of fair competition in the marketplace. *See Brightview*, 441 F. Supp. 3d at 134–35 (defining unfair competition to include actions "that substantially interfere with the ability to compete or conflict with accepted principles of public policy" (cleaned up)). As for damage or jeopardy to the business, Plaintiff has not cited to a dollar amount of losses, but the Court has previously

11

recognized that loss of trade secrets and reputational damage are kinds of harms that may be difficult to quantify in a dollar amount. *See ClearOne*, 710 F. Supp. 3d at 436. In any event, ClearOne has pointed to at least one named prospective client who was targeted by the Defendants' scheme. (*See generally* York Decl., ECF No. 4-4.) This prospective client was misled by Gilmore's actions into believing that Gilmore was still employed by ClearOne after he had in fact been terminated. (*Id.*) This prospective client ultimately enrolled in an unknown competing debt resolution company. (*Id.*) Defendants' unfair conduct jeopardized Plaintiff's business by threatening the security of confidential customer data and by causing the loss of at least one potential customer. Accordingly, Plaintiff will be granted summary judgment on its unfair competition claim.

### 5. *Tortious Interference with Contract and with Prospective Business Advantage (Counts VI–VII)*

Plaintiff brings claims for tortious interference with contract (Count VI), and for tortious interference with prospective business advantage (Count VII) against both Defendants. Plaintiff has moved for summary judgment in its favor on Count VI as to Kersen, and Count VII as to both Defendants.

As the Supreme Court of Maryland (then the Court of Appeals of Maryland) has stated:

> [T]he two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract. The principle underlying both forms of the tort is the same: under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation.

*Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984). The two torts are similar, but "where a contract between two parties exists, the circumstances in which a third party has a right to interfere with the performance of that contract are more narrowly restricted." *Id.* In other words,

12

"[a] broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved." *Id.*

To prevail on a claim for tortious interference with contract, the plaintiff must show "(1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional interference with that contract; (4) hindrance to the performance of the contract; and (5) resulting damages to the plaintiff." *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 517 (D. Md. 2023). And, to prevail on a claim for tortious interference with prospective business advantage, a plaintiff must show: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003) (internal quotation omitted).

Maryland courts have "refused to adopt any theory of tortious interference with contract or with economic relations that converts a breach of contract into an intentional tort." *Id.* (quotation omitted). In our system of free enterprise, a tortious interference claim does not lie from the mere fact that a client or business partner has been persuaded to switch its business to that of a rival. Instead, a tortious interference claim requires "conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Id.* (internal quotation omitted).

Applying these principles, Plaintiff is entitled to summary judgment with respect to Count VII for tortious interference with prospective advantage against Gilmore. The undisputed facts, consisting both of exhibits and evidence that the Court heard during the April 2, 2024, preliminary injunction hearing, show that Gilmore intentionally and knowingly misappropriated customer

leads from ClearOne and used them for the purpose of benefiting a rival company. (*See, e.g.*, Transcript of Discord Chats Part 1-3 at 9:16–20 (ECF No. 4-2 at 5) (Gilmore stating that "we're basically combining the power of the commission plan of the small company that we partnered with with the excellent leads that ClearOne is paying for but wasting, and we['re] making our money off top and benefitting from both").) Moreover, as discussed in Part III.A.4, *supra*, Gilmore's actions likely led to the loss of at least one potential customer. (*See generally* York Decl., ECF No. 4-4.)

However, Plaintiff is not entitled to summary judgment on Count VI for tortious interference with contract as to Kersen. Plaintiff argues that Kersen "tortiously induced Gilmore to breach his Confidentiality Agreement by misappropriating Confidential Information for the benefit of a competing business with which Kersen was affiliated." (ECF No. 85-1 at 9.) The undisputed evidence is consistent with this contention. (*See generally* ECF Nos. 4-1, 4-2 (transcript of chat conversations between Kersen, Gilmore, and a ClearOne employee indicating that Kersen and Gilmore were working together to misappropriate ClearOne lead lists).) However, viewing the evidence in the light most favorable to Kersen—as the Court must—it is not clear whether Kersen recruited Gilmore for his scheme, or whether Gilmore recruited Kersen. If the latter scenario is true, then Kersen would not have *induced* Gilmore to breach his contract, because Gilmore would have independently decided to do so. *See* Restatement (Second) of Torts § 766 & cmt. h (explaining that the defendant's actions must "induc[e] or otherwise caus[e] the breach").

Plaintiff is also not entitled to summary judgment on Count VII for its claim for tortious interference with prospective advantage against Kersen. Plaintiff has only pointed to one specific potential customer who was targeted by the Defendants' scheme. (*See* ECF No. 4-4.) Viewing the evidence in the light most favorable to the nonmovants, a reasonable jury could conclude that

only *Gilmore*, and not also Kersen, was involved in soliciting this particular customer. While

Kersen doubtlessly at least *attempted* to wrongfully divert other potential ClearOne clients,

Maryland does not recognize an action for attempted tortious interference with prospective

business advantage. *See Kaser*, 831 A.2d at 53 (stating that a tortious interference plaintiff must

show "actual damage and loss").

In short, the Court will grant summary judgment in Plaintiff's favor on Count VII as to

Gilmore.  Summary judgment is denied on Counts VI and VII as to Kersen.  Moreover, Plaintiff

has not requested summary judgment on Count VI as to Gilmore, and accordingly summary

judgment will not be granted on that count as to Gilmore.

### 6.  *Civil Conspiracy (Count VIII)*

Finally, Plaintiff moves for summary judgment as to its claim for civil conspiracy under

Count VIII.  To prevail on a claim for civil conspiracy, a plaintiff must prove the following three

elements:

> 1) A confederation of two or more persons by agreement or understanding;
> 2) Some unlawful or tortious act done in furtherance of the conspiracy or use of
> unlawful or tortious means to accomplish an act not in itself illegal; and
> 3) Actual legal damage resulting to the plaintiff.

*Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (cleaned up).  "Conspiracy is not a

separate tort capable of independently sustaining an award of damages in the absence of other

tortious injury to the plaintiff." *Id.* (internal quotation omitted).  Instead, a civil conspiracy claim

is "in the nature of an aggravating factor with respect to the underlying tortious conduct." *Marshall*

*v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (internal quotation omitted).  Because

there is rarely direct evidence of an unlawful agreement, civil conspiracy may be proved by

circumstantial evidence.  *Aarow Electrical Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525, 542

(D. Md. 2023) (citing *Hoffman v. Stamper*, 867 A.3d 276, 291 (Md. 2005)).

15

Plaintiff is entitled to summary judgment on its civil conspiracy claim. As discussed above, the undisputed evidence, including the Defendants' own words, show that the two individuals agreed to misappropriate ClearOne's trade secrets and divert confidential ClearOne client leads for the benefit of an unknown competitor, while also attempting to solicit other employees to breach their contracts to join them in this scheme. (*See generally* ECF Nos. 3-2, 3-10, 4-1–4-4, 13-5, 14.) Moreover, while Plaintiff has not shown damages in a dollar amount, it has pointed to the loss of at least one prospective customer, plus the intangible harms associated with the loss of trade secrets and the compromising of ClearOne's internal business systems. (*See* ECF No. 3-2.)

### B. Other Permanent Injunction Factors

Having concluded that Plaintiff is entitled to summary judgment with respect to Counts I, II, III, V, and VIII as to Gilmore and Kersen and Count VII as to Gilmore, the Court turns now to Plaintiff's requested relief of a permanent injunction.

The Court begins from the premise that an injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). As the Court explained in Part II, *supra*, Plaintiff must show— in addition to actual success on the merits—that (1) it has suffered an irreparable injury; (2) that can only be remedied by equitable relief; (3) the balance of hardships between the parties tips in favor of issuing an injunction; and (4) a permanent injunction would not disserve the public interest. *Mayor of Balt.*, 973 F.3d at 274.

The first factor to consider is whether Plaintiff has suffered an irreparable injury. The Court's findings with respect to irreparable harm at the TRO stage apply with equal force today, as neither party has presented evidence in the interim that would tend to undercut any of those findings:

16

Here, ClearOne is likely to suffer irreparable harm absent immediate injunctive relief. For one, the harm that ClearOne will suffer include loss of goodwill and loss of trade secrets, harm that is difficult to quantify. ClearOne's COO explains that the company "invests millions of dollars monthly in advertising, marketing and other research efforts" to develop its leads lists. (Wrinn Decl. ¶4, ECF No. 3-2 at 2.) Should these lists fall into the hands of a rival, the competitive advantages ClearOne enjoys in the industry could irrevocably disappear, and money damages alone could not recompense this loss. Additionally, at the hearing for the TRO Motion, ClearOne's counsel raised the legitimate concern that the customer lead lists contain sensitive and confidential financial information about prospective customers, information that these individuals have entrusted to ClearOne. The risk of the breach of this sensitive information constitutes another type of irreparable harm.

Furthermore, the Defendants' actions are not confined to the past; they are apparently continuing to the present day. There is a real risk that the Defendants are still attempting to induce current ClearOne employees to share customer lead information with them. . . . In other words, "there still exists a 'cognizable danger of [a] recurrent violation' by Defendants, such that injunctive relief is still required." *Brightview*, 441 F. Supp. 3d at 140 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). If the Court does not grant injunctive relief, then the Defendants may continue in their scheme to poach potential customers from ClearOne and divulge ClearOne's trade secrets.

*ClearOne*, 710 F. Supp. 3d at 436–37. In the absence of any countervailing evidence, these findings—which were provisional when first made—suffice to establish that ClearOne has suffered irreparable harm. *See Brightview*, 441 F. Supp. 3d at 137 ("Courts have recognized that the potential for the loss of trade secrets demonstrates irreparable harm because a trade secret once lost is, of course, lost forever." (cleaned up)).

In addition to being irreparable, the Court determines that equitable, as opposed to legal, relief, is necessary to remedy Plaintiff's injury. As the Court has previously stated, "the loss of goodwill in the relevant industry, loss of customers, and loss of the ability to attract new customers are difficult to quantify in terms of money damages." *ClearOne*, 710 F. Supp. 3d at 436. Simply put, only an injunction can permanently stop the Defendants from continuing to profit from misappropriated customer lead list information and from soliciting current ClearOne employees to

join their scheme.[5]

As to the balance of hardship between the parties, the Defendants concede that they will not be harmed by entry of a permanent injunction and have in fact consented to being enjoined. (*See* ECF No. 72 (Gilmore consenting to entry of a permanent injunction and stating that "[h]aving a preliminary injunction transition to permanent injunction does not produce a detrimental effect to myself [due to] the fact [that] I am not engaging in any activities with any leads from Clear One Advantage nor do I plan to in the future."); ECF No. 82 (Kersen consenting to a permanent injunction).)

Finally, there is the public interest to be considered. As the Court previously stated:

> "[T]he public interest favors the protection of trade secrets, and the prevention of unfair business practices." *Brightview*[, 441 F. Supp. 3d at 142]. The public interest also favors the enforcement of reasonable restrictive covenants, as they "can play an important role in the growth of a business that depends upon the development of good will through effective customer service." *Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 642 (D. Md. 1998).

*ClearOne*, 710 F. Supp. 3d at 438. Looking more broadly at the overall scheme in this case, the Court recalls the time-honored principle that, where "elements of fair trade are found to be lacking[,] equity will grant protection against the offending party." *Balt. Bedding*, 34 A.2d at 342.

For these reasons, the Court finds that entry of a permanent injunction against both defendants is warranted.

## C. Scope of Injunction

Having found that issuance of a permanent injunction is appropriate, the Court must determine the appropriate scope of that injunction. "As with any equity case, the nature of the

---

[5] When the Court initially entered the TRO, the Defendants' scheme may have still been ongoing. Now, the Defendants have been under a court injunction for several months and there is no indication that they have violated the Court's orders; however, there is every risk that, without permanent injunctive relief, the Defendants could renew their scheme.

violation determines the scope of the remedy." *Mayor of Balt.*, 973 F.3d at 293 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971)). An injunction should be no broader than necessary to provide complete relief to the plaintiff. *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011). Thus, the appropriate scope in any case depends on the Court's careful evaluation of the circumstances before it. *Id.*

The Court has reviewed the contents of the injunction orders proposed by Plaintiff. Plaintiff requests that both Defendants be permanently enjoined from, *inter alia*, using ClearOne confidential information, soliciting current ClearOne employees, and targeting certain ClearOne clients or prospective clients. (ECF Nos. 74-1, 85-3.) The requested injunction would also order the Defendants to search for any ClearOne information in their possession and promptly return such information to ClearOne's counsel. (*Id.*)

The Court finds that the requested relief is appropriate in the circumstances of this case. The Court has found that Plaintiff has proven the bulk of their case against Defendants.[6] The proposed injunction would permanently bar the Defendants from committing acts that are independently wrongful, such as continuing to misappropriate ClearOne trade secrets or attempting to gain unauthorized access to ClearOne's internal systems. The injunction would also bar the Defendants from soliciting ClearOne clients, prospective clients, or employees that either Defendant came to know in the course of their employment or their scheme. However, these further restrictions (which restrain the Defendants' right to free competition) have a narrow temporal scope—they will expire in May 2025 for Kersen, and in November 2025 for Gilmore. In any event, these restrictions do no more than bind Defendants to the terms of the Confidentiality

---

[6] Although the Court has found that Plaintiff has failed to prove its case with respect to certain claims, these claims are essentially duplicative of or ancillary to the claims that the Court considers to the most important in the context of this case, namely the claims for breach of contract, misappropriation of trade secrets, and unfair competition. On these most important claims, Plaintiff has prevailed.

Agreements that they *already signed*, which themselves contain a two-year limitation from the date of the termination of employment. (*See* ECF No. 3-3 at 3–4; ECF No. 3-5 at 3–4.) Finally, the proposed injunction's requirement for Defendants to search for and return to ClearOne's counsel any ClearOne confidential information in their possession is a reasonable one.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant in substantial part Plaintiff's dispositive motions (ECF Nos. 74, 85). Summary judgment will be entered in favor of Plaintiff on Counts I, II, III, V, and VIII as to both Defendants, and on Count VII as to Gilmore. Summary judgment will be denied with respect to Counts IV and VI (as to both Defendants) and Count VII (as to Kersen). The Court will also permanently enjoin the Defendants pursuant to the terms of the accompanying permanent injunction order.

Because the Court will grant Plaintiff essentially all the relief it asks for, the remaining counts (Counts IV and VI as to both Defendants, and Count VII as to Kersen), will be dismissed as moot, because even if the Court were to find in Plaintiff's favor on these counts, Plaintiff would not be entitled to any further relief. All other pending motions will also be denied as moot.

A separate order and a separate permanent injunction will issue.

DATED this ___12___ day of November, 2024.

BY THE COURT:

James K. Bredar
United States District Judge